,

**U.S. DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**                    NOV 1 2 2008

**UNITED STATES OF AMERICA**                             **FILED**

                v.                     **Cr. No.** 08-CR-128-01-PB

**KURT SANBORN**

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

Procedure, the United States of America by its attorney, Thomas P.

Colantuono, the United States Attorney for the District of New

Hampshire, and the defendant, Kurt Sanborn, and the defendant's

attorneys, Alan Baum and Donald Kennedy, enter into the following

Plea Agreement:

### 1.  **The Plea and The Offense**.

The defendant agrees to waive his right to have this matter to

presented to a grand jury and to plead guilty to an Information

charging him with wire fraud, in violation of 18 U.S.C. §1343.

### 2.  **Elements of the Offense**.

The defendant understands that if the case proceeded to trial

the government would be required to prove each of the following

elements beyond a reasonable doubt:

**First**, that a scheme and artifice, substantially as
charged in the Information, to obtain money by means of
false or fraudulent pretenses existed;

**Second**, that the defendant knowingly and willfully
participated in the scheme with an intent to defraud; and

**Third**, that interstate wire communications, on or
about the dates alleged, were used in furtherance of the

scheme.[1]

## 3. **Offense Conduct**.

In approximately 2002, Diamond Action, Inc., received authority to construct a baseball park for a professional minor league baseball team, the Fisher Cats, in Manchester, New Hampshire.

At the time, Diamond Action's owner had a number of other business responsibilities which demanded a significant amount of his attention, including his ownership of another professional minor league baseball team, "The Spinners," in Lowell, Massachusetts. Because of those commitments, Diamond Action's owner delegated a number of tasks related to the construction of the ball park to a law firm and to the defendant, Kurt Sanborn, d/b/a The Sanborn Group, Inc. ("SGI").

In that regard, the defendant was primarily responsible for collecting invoices from contractors who participated in the construction of the ball park and submitting the invoices to Diamond Action's owner.

With Diamond Action's owner's approval, the law firm paid the invoices by issuing checks from a checking account that was established for Diamond Action. The defendant deposited the checks he received from the law firm to an account he established for SGI at Enterprise Bank ("SGI's account").

---

[1]     In United States v. Lopez, 71 F.2d 954, 961 (1st Cir. 1995) (affirmed wire fraud convictions based on documents that responded to questions about illegal withdrawals that were faxed more than two years after the illegal withdrawals occurred), the court explained the "in furtherance requirement of 18 U.S.C. §1343:

> [T]he case law requires that the use of the wires must be incident to an essential part of the scheme, Pereira v. United States, 347 U.S. 1 (1954), but the cases have stretched that concept to include use of the wires in attempts to lull the victims into a sense of false security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely. United States v. Lane, 474 U.S. 438 (1986).

Lopez, 71 F.2d at 961.

While performing those duties, the defendant stole $119,500 when he submitted invoices to Diamond Action from two fictitious contractors, Environmental Solutions and CS Drilling; deposited the checks that were issued to pay the fraudulent invoices to the SGI account; and used the proceeds from the deposits for his personal benefit.

The defendant stole an additional approximately $164,600 when he submitted counterfeit invoices to Diamond Action from a contractor, Derry Engineering, for services that were not performed; deposited the checks that were issued to pay the counterfeit invoices to the SGI account; and used the proceeds from the deposits for his personal benefit.

The defendant also stole approximately $9,450 when he submitted a legitimate $53,450 invoice to Diamond Action from another company, Kimball Chase; deposited the check that was issued to pay that invoice to the SGI account; issued a check in the amount $44,000 to Kimball Chase; and used the remaining funds for his personal benefit.

In 2004, Diamond Action's owner hired a law firm to determine whether money that was deposited to Diamond Action's bank account had been misused. During the investigation, the law firm asked the defendant to provide documentation to prove he made the following payments on behalf of Diamond Action:

| Payee | Amount of Payment |
|---|---|
| Environmental Solutions | $24,665.00 |
| Environmental Solutions | $8,655.00 |
| Derry Engineering | $13,600.00 |
| Kimball-Chase | $54,000.07 |
| Harvey Construction | $11,081.90 |

The defendant responded to that inquiry on February 20, 2004, by causing copies of the following four fraudulent checks - which were not delivered to the payees - to be sent by facsimile from his office in Rhode Island to the law firm's office in New Hampshire:

| Date of Check | Check Number | Payee | Amount of Check |
|---|---|---|---|
| 03/20/03 | 1430 | Environmental Solutions | $24,665.00 |
| 05/09/03 | 1496 | Derry Engineering | $13,600.00 |
| 05/09/03 | 1497 | Environmental Solutions | $8,665.00 |
| 08/08/08 | 1877 | Kimball-Chase | $54,000.00 |

4. **Penalties.**

The defendant understands that the maximum penalties for the

offenses are:

A.   A prison term of twenty (20) years;

B.   A fine of $250,000, 18 U.S.C. §3571(b)(3); or not
     more than the greater of twice the gross gain or
     twice the gross loss caused by the offense; see 18
     U.S.C. §§ 3571(d);

C.   A possible additional fine to pay the costs to the
     government of any imprisonment, probation or
     supervised release ordered. See U.S.S.G. §5E1.1(I);

D.   A mandatory special assessment of $100.00, which
     the defendant agrees to pay at or before the time
     of sentencing; and

E.   A term of supervised release of not more than five
     (5) years. The defendant understands that failure
     to comply with any of the conditions of supervised
     release may result in revocation of supervised
     release, requiring the defendant to serve in prison
     all or part of the term of supervised release, with
     no credit for time already spent on supervised
     release. See 18 U.S.C. §3583(b)(1).

5. **Sentencing and Application of the Sentencing Guidelines.**

The defendant understands that the Sentencing Reform Act of

1984 applies in this case and that the Court is required to

consider the United States Sentencing Guidelines as advisory

guidelines. The defendant further understands that he has no right

to withdraw his guilty plea if the applicable advisory guideline

range or his sentence is other than what he anticipated, except as

expressly provided in this Plea Agreement.

The defendant also understands that the government and the

United States Probation Office shall:

 A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

 B. Respond to questions from the Court;

 C. Correct any inaccuracies in the pre-sentence report; and/or

 D. Respond to any statements made by the defendant or the defendant's counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to him pursuant to the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6. **Sentence and Government's Sentencing Recommendation**.

Pursuant to Fed. R. Crim. P.11(c)(1)(C) and U.S.S.G. §2B1.1(b)(1)(G), the government and the defendant agree that the amount of the loss that was caused by the offenses was greater than $200,000 and less than $400,000.

By using the word "binding", the parties mean that if the Court cannot or will not accept the stipulation, the defendant will be permitted to withdraw his guilty plea.  The defendant will not

be allowed to withdraw his guilty plea for any other reason.

The defendant understands that government may contend that other sentencing enhancements should be applied to this case, and the defendant is free to object to them.

Except as otherwise provided in this Agreement, the government shall not request an upward departure or variance from the applicable advisory guideline sentencing range, as determined by the sentencing court.

The defendant shall not request a downward departure, but may request a downward variance from the applicable advisory guideline sentencing range, as determined by the sentencing court.

The government and the defendant are free to make recommendations regarding terms of imprisonment, fines, conditions of supervised release or probation, and other penalties, requirements and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense.  The United States, however, may oppose any adjustment for acceptance of responsibility

and withdraw from this Plea Agreement if the defendant:

A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B. Challenges the United States' offer of proof at any time after the plea is entered;

C. Denies involvement in the offense;

D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E. Fails to give complete and accurate information about his financial status to the Probation Office;

F. Obstructs or attempts to obstruct justice, prior to sentencing;

G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H. Fails to appear in court as required;

I. After signing this Plea Agreement, engages in additional criminal conduct; and/or

J. Attempts to withdraw his guilty plea.

If the sentencing court determines that the defendant's offense level is sixteen or greater and the defendant has assisted the government in the investigation or prosecution of the defendant's own misconduct by timely notifying the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, and

the government will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is under no obligation to reduce the offense level if it finds that the defendant has not accepted responsibility.

8. **Substantial Assistance**.

If the defendant provides substantial assistance in the investigation or prosecution of another person who has committed an offense, the United States may file a motion pursuant to U.S.S.G. §5K1.1 and 18 U.S.C. §3553(e) advising the sentencing Court of all relevant facts pertaining to that determination and requesting the Court to sentence the defendant in light of the factors set forth in §5K1.1(a)(1)-(5).

The defendant understands that the determination of whether to file such a motion rests solely with the United States.  This means that the United States may or may not file a motion under U.S.S.G. §5K1.1 or 18 U.S.C. §3553(e).  The decision whether to file such a motion will depend on the United States' evaluation of any assistance provided by the defendant.  The defendant also

understands that even if such a motion is filed, the Court is under no obligation to grant or act favorably upon the motion. It is understood that the sentence to be imposed on the defendant remains within the discretion of the sentencing Court.

## 9. **Use of Certain Information**.

Provided the defendant gives truthful, accurate and complete information, the United States agrees that, pursuant to U.S.S.G. § 1B1.8(a), any self-incriminating information provided by the defendant which was not known by the government, or which the government could not establish by a preponderance of the evidence at the time of the defendant's briefings, shall not be used in determining the defendant's advisory guideline range. This Plea Agreement is subject to the § 1B1.8(b) exceptions and reserves to the government the ability to make derivative use of the defendant's statements.

## 10. **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant understands that he has the right:

- A. To plead not guilty or to maintain that plea if it has already been made;

- B. To be tried by a jury and, at that trial, the right to the assistance of counsel;

Page 9 of 15

C.   To confront and cross-examine witnesses against
     him;

D.   Not be compelled to provide testimony that may
     incriminate him; and

E.   To compulsory process for the attendance of
     witnesses to testify in his defense.

The defendant understands that by pleading guilty he waives
and gives up those rights and that if a plea of guilty is
accepted by the Court, there will not be a trial of any kind.

The defendant understands that if he pleads guilty, the
Court may ask him questions about the offense, and if he answers
those questions falsely under oath, on the record, and in the
presence of counsel, his answers may later be used against him in
a prosecution for perjury or making false statements.

## 11.  **Acknowledgment of Guilt; Voluntariness of Plea**.

The defendant acknowledges that he:

A.   Is entering into this Plea Agreement and is
     pleading guilty freely and voluntarily because he
     is guilty;

B.   Is entering into this Plea Agreement without
     reliance upon any discussions with the government
     and without promise of benefit of any kind except
     as described in this Plea Agreement;

C.   Is entering into this Plea Agreement without
     threats, force, intimidation, or coercion of any
     kind;

Page 10 of  15

D.   Understands of the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his undersigned attorney.

12.  **Scope of Agreement**.

The defendant acknowledges and understands that this Plea Agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority.

The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from his pleas of guilty, because such matters are solely within the discretion of the specific administrative or government agency involved.  Finally, the defendant acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

13.  **Collateral Consequences**.

The defendant understands that he will be adjudicated guilty of the offenses to which he will plead guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

14.   **Satisfaction of Federal Criminal Liability; Breach**.

The defendant's guilty plea, if accepted by the Court, will satisfy any federal criminal liability of the defendant in the District of New Hampshire as a result of his participation in the conduct which forms the basis of the Information in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the government may consider such conduct to be a breach of the Plea Agreement and may withdraw from it.

15. **Waivers**.

A.   **Appeal and Collateral Review**.

The defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal.  He is also aware that he may, in some circumstances, be able to argue that his guilty pleas should be set aside, or his sentence be set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255 or § 2241).

By entering into this Plea Agreement, the defendant knowingly and voluntarily waives any right to appeal or to collaterally challenge:

> 1.   His guilty pleas and any other aspect of his convictions, including, but not limited to, any rulings on pretrial suppression motions

or any other pretrial dispositions of motions
and issues; and

2.      The imposition by the Court of a sentence
which does not exceed the sentence
recommended by the United States, even if the
Court rejects one or more positions advocated
by the U.S. Attorney or defendant with regard
to the application of the advisory Sentencing
Guidelines.

The defendant's waiver of rights to appeal and to bring
collateral challenges shall not apply to appeals or challenges
based on new legal principles in First Circuit or Supreme Court
cases decided after the date of this Plea Agreement which are
held by the First Circuit or Supreme Court to have retroactive
effect.  The defendant's waiver of the right to collateral review
also does not extend to claims that the plea was unknowing or
involuntary or to claims that he received ineffective assistance
of counsel in the negotiation of the plea or plea agreement.

This Plea Agreement does not affect the rights or
obligations of the United States as set forth in 18 U.S.C. §
3742(b), and the United States therefore retains its appeal
rights.

B.      **Freedom of Information and Privacy Acts.**

The defendant hereby waives all rights, whether asserted
directly or by a representative, to request or receive from any
department or agency of the United States any records pertaining

to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

16. **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

17. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

18. **Agreement Provisions Not Severable**.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Thomas Colantuono
United States Attorney

By: _Robert M. Kinsella_                Dated: _11-12-D8_

Robert M. Kinsella
Assistant U.S. Attorney

The defendant, Kurt Sanborn, certifies that he has read this
15-page Plea Agreement and that he fully understands and accepts
the terms thereof.

_____                Dated: _11/12/08_

Kurt Sanborn, Defendant

I have read and explained this fifteen 15-page Plea
Agreement to the defendant, Kurt Sanborn, and he has advised me
that he understands and accepts its terms.

_____                Dated: _11/12/08_

Alan Baum, Esq.
Attorney for Kurt Sanborn

_____                Dated: _11/12/08_

Donald Kennedy, Esq.
Attorney for Kurt Sanborn