**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 3/9/10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *  08-cr-128-01-PB
            v.                  *  November 19, 2009
                                *  11:40 a.m.
KURT SANBORN                    *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

For the Government:   Robert Kinsella, AUSA
                      U.S. Attorney's Office
                      53 Pleasant Street
                      Concord, NH 03301

For the Defendant:    Alan Baum, Esq.
                      Law Offices of United Defense Group
                      4181 Sunswept Drive, Suite 100
                      Studio City, CA  91604

                      Donald A. Kennedy, Esq.
                      78 W. Merrimack Street
                      Manchester, 03101

Probation Officer:    Kevin Lavigne

Court Reporter:       Sandra L. Bailey, LCR, CM, CRR
                      Official Court Reporter
                      United States District Court
                      55 Pleasant Street
                      Concord, NH  03301
                      (603)225-1454

2

```
 1                          BEFORE THE COURT

 2              THE CLERK:  Court's in session and has for

 3    consideration a sentencing hearing in United States of

 4    America versus Kurt Sanborn, Criminal Case Number

 5    08-cr-128-01-PB

 6              THE COURT:  Mr. Sanborn, the report I have for

 7    you is dated January 9th.  It was revised on

 8    November 12th.  Have you seen that report?

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Have you read it and discussed it

11    with your attorney?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  Do you feel you understand it?

14              THE DEFENDANT:  Yes, I do, sir.

15              THE COURT:  Does the government dispute any of

16    the facts or legal conclusions contained in the report?

17              MR. KINSELLA:  We do not.

18              THE COURT:  Are you pressing any objections on

19    behalf of your client?

20              MR. BAUM:  Good morning, your Honor.  Alan

21    Baum appearing on behalf of Mr. Sanborn along with Mr.

22    Kennedy.

23              We had lodged an objection to the first draft

24    of the PSR wherein the probation officer assessed a

25    two-point adjustment for role in the offense.  The
```

1    revised report that the court is now referring to

2    withdrew that adjustment but did explain in the addendum

3    that they believed the two points for abuse of position

4    of trust would be applicable, therefore I suppose the

5    objection to role in the offense is moot, and after

6    considering the application notes and the authority we

7    would submit the issue and not object to the probation

8    officer's conclusion on the two points for abuse of

9    position of trust.

10              THE COURT:  It's a classic case where that

11   adjustment fits.

12              MR. BAUM:  I agree, your Honor.

13              THE COURT:  All right, so that's fine, then,

14   so you don't object to the revised report.

15              I adopt the findings of fact and conclusions

16   of law set forth in the report which will be made a part

17   of the record under seal.  I determine that the

18   defendant's total offense level is 18, his Criminal

19   History Category is I.  The guideline sentencing range

20   is 27 to 33 months.

21              What's the government's recommendation?

22              MR. KINSELLA:  We're recommending 27 months.

23              THE COURT:  All right.  Counsel, I'll hear you

24   on your request for a variance and any arguments you

25   have for a sentence lower than the --

4

1           MR. BAUM:  May I use the podium?

2           THE COURT:  Yes.

3           MR. BAUM:  And your Honor, I apologize for not

4    having submitted this earlier this morning, but if I may

5    ask the court to receive the -- a letter from Greg

6    Sanborn who is the defendant's brother, it was just --

7    it was received after I filed my sentencing memorandum.

8           THE COURT:  All right, why don't you hand it

9    up.  I've read the other letters that have been

10   submitted.  Just give me a moment to read this one.

11          (Pause.)

12          THE COURT:  All right, I've read the letter.

13   Go ahead.

14          MR. BAUM:  Thank you, your Honor.  In the

15   defendant's sentencing memorandum the defendant is

16   asking for a variance whereby the court would impose a

17   sentence, rather than a commitment to the Bureau of

18   Prisons, fashion a sentence that would enable Mr.

19   Sanborn to continue in the very positive and productive

20   steps that he has been able to take in connection with

21   his current employment.  I know your Honor handles

22   sentencings probably every day and for many years and

23   nobody wants to go to prison --

24          THE COURT:  I've sentenced a small city worth

25   of people to prison over my 17 years as a judge.

1          MR. BAUM:  And in my 41 years as a defense

2   lawyer, regretfully I've represented even more.  But

3   every so often the argument presented to the court that

4   not putting him in prison would enable him to continue

5   to pay his child support, continue to go to church,

6   continue to be productive and mend some old fences with

7   his family, continue to work and pay restitution, every

8   so often those excuses or those explanations or

9   arguments --

10          THE COURT:  Excuse me, has he made any

11   restitution up to now?

12          MR. BAUM:  He has not because the

13   employment -- his earnings have been growing in the job

14   that he's now in, and it has taken him a very long time

15   to pay the old debts that still exist in connection with

16   orders that have been made --

17          THE COURT:  I'll tell you, actions speak

18   louder than words.  I have had defendants who, for

19   example, have taken a second job and devoted the

20   earnings to the second job solely to making restitution

21   in advance of sentencing, and to the extent somebody has

22   actually made a substantial contribution to reducing the

23   restitution obligation in advance of sentencing, that's

24   something that often impresses me because it's easy to

25   say how sorry you are, it's a lot harder to go out and

6

1    do something about it.  I'm not going to hold it against

2    your client that he didn't do that, but I do think we

3    have to take expressions of remorse into their

4    appropriate context when we see a case like this.  Your

5    client made substantial money out of his crime and

6    hasn't made any effort to pay it back.

7             MR. BAUM:  I understand, your Honor.  The

8    circumstances that led to this crime and other

9    self-destructive and inappropriate and illegal behavior

10   were dealt with a little bit in Dr. Drogan's report.  I

11   think that Mr. Sanborn is beginning to recognize the

12   factors that led him to make it seem as though

13   everything was okay by stealing instead of living within

14   his own means.  The low self-esteem that leads a person

15   to do that, to hide that from your family, again, are

16   things that recent insight we believe is going to make a

17   big difference in his future.  He's growing with this

18   company now.  His employer just told him that --

19            THE COURT:  Are you able to make any

20   representations to me concerning where this money went,

21   what it was used for?

22            MR. BAUM:  Only generally speaking, and that

23   was over a period of about 18 months.  The family had

24   acquired debt.  We don't place blame, but as far as who

25   it was that was charging and had like 12 credit cards

7

1  that needed to be serviced, it wasn't Mr. Sanborn, but

2  again, I hesitate to point fingers --

3          THE COURT:  Well, I, frankly, and maybe the

4  probation officer has some updated information, the

5  report I have reflects very limited information

6  concerning the defendant's current financial status.

7  Has he submitted a statement of his net worth and

8  documentation to support that?

9          MR. LAVIGNE:  We have no additional

10  information, your Honor.

11          THE COURT:  So you really can't tell me what

12  he's got for bank accounts, what he's got for --

13          MR. LAVIGNE:  Not at this time.

14          THE COURT:  Yeah.

15          MR. BAUM:  I can tell you this, your Honor.

16          THE COURT:  Why didn't you give us that

17  information which is routinely supplied by defendants?

18          MR. BAUM:  It wouldn't shed any more light

19  than --

20          THE COURT:  You're saying sort of trust me,

21  judge, trust the defendant.  How do I know he doesn't

22  have the money sitting in a bank account somewhere?

23          MR. BAUM:  Well, there is a parallel -- well,

24  not parallel -- but there's another action that's been

25  going on for about two and a half years, and that's in

8

1   the family law courts in this county, and he has been

2   held strictly accountable as to all of his income,

3   payments are regulated, child support is all being done

4   through a guardian that has been appointed, it's a

5   rather contentious not divorce, that part is over with,

6   but in the child custody, he has a 9-year-old and

7   12-year-old.

8           THE COURT:  As much sympathy as I have for his

9   children and his ex-wife, they're not allowed to take

10  money he stole from other people and use it for their

11  support.

12          MR. BAUM:  Well, that hasn't been the case in

13  the last four years since this crime was --

14          THE COURT:  I just don't know and have no way

15  of verifying -- does the government have any, have you

16  done an investigation to determine whether there are any

17  proceeds to this criminal activity that still remain and

18  are subject to being forfeited or acquired by the

19  government in some way?

20          MR. KINSELLA:  To our knowledge there is no

21  criminal proceeds available for forfeiture or to be used

22  to --

23          THE COURT:  Do you have something -- is that

24  the result of investigation because I don't have the

25  financial information that I ordinarily have about a

9

1    defendant.

2              MR. KINSELLA:  It's the result of our

3    investigation of the crime and determining where he

4    spent the money and --

5              THE COURT:  Where do you say it went?

6              MR. KINSELLA:  To pay personal expenses

7    related to his family which were exorbitant.

8              THE COURT:  You mean his former wife and

9    children or his current family?

10             MR. KINSELLA:  His family at the time which is

11   his ex-wife.

12             THE COURT:  So it was just debts that he and

13   she had incurred and money was used to pay down those

14   debts?

15             MR. KINSELLA:  Yes.

16             THE COURT:  And you believe that in fact that

17   money was spent, that it is not available somewhere now

18   to satisfy a restitution payment?

19             MR. KINSELLA:  Yes.

20             THE COURT:  And you believe that based on an

21   investigation where you were able to track the source of

22   funds through accounts?

23             MR. KINSELLA:  We saw where the stolen money

24   went to and how it was used, yes.

25             THE COURT:  Okay.  Well, that gives me some

10

1   reassurance that he just doesn't have a lump sum of

2   money out there hidden from all of us.  Okay.  All

3   right.

4           Thank you.  Go ahead.

5           MR. BAUM:  And I'm relieved because I was

6   relying upon that as well, and I felt perhaps I let the

7   court down --

8           THE COURT:  I don't trust criminal defendants,

9   you know, to the extent that I don't have verification

10   about things like that, I don't trust them, and why

11   should I?

12           MR. BAUM:  No, I --

13           THE COURT:  Ordinarily we are provided with

14   financial records, and without the financial records I'm

15   not going to trust the defendant, but I certainly trust

16   the government that does a much more extensive

17   investigation ordinarily than our probation office is

18   capable of conducting, and the government represents to

19   me it's tracked the proceeds of the criminal activity

20   and determined it went into paying his and his ex-wife's

21   and children's expenses and is no longer available to

22   satisfy restitution, I accept that.

23           MR. BAUM:  Thank you, your Honor.  Just

24   putting things in perspective chronologically, for a

25   couple of years after he was charged in this case and

1   pled guilty, he found it very difficult to get any kind

2   of meaningful employment.  Lots of reasons for that

3   which, again, would partially involve some finger

4   pointing and I don't want to do that.  But 18 months ago

5   he was able to get this job with Geocomp, and since then

6   he has built the company and has really established

7   himself.  His employer has indicated that he's willing

8   to pay him more money if it makes a difference as far

9   as -- that can be set aside for restitution.  He told

10  Kurt that he was going to give him a $50,000 a year

11  raise which could be earmarked especially for

12  restitution.

13          Now, I know that's prospective and I know that

14  the court has no power to bind Geocomp to do that or to

15  order them to do that, but again, it's a representation

16  and it's at least -- what we have shown is this recent

17  employment which is very productive.  He's in full

18  compliance with his child support payments.  His family

19  is here.  There has been some alienation over the years.

20  Some repair has been done now and his parents are here

21  and his sister and his brother in his support.

22          Like I said, and I know that a lot of

23  financial crimes come before your Honor with an argument

24  that, well, if you put him in prison, all payments stop,

25  and that's just the way it goes.  I mean, many judges

1  say, well, why didn't he think about that when he was

2  committing these crimes --

3          THE COURT:  Well, you can't allow people to

4  buy their way out of prison either.  The idea that if

5  you can work and pay restitution you shouldn't have to

6  be held to account for your crimes is not an idea that I

7  think society is prepared to accept.

8          MR. BAUM:  And that's why we walk a fine line

9  in suggesting that in the overall consideration of all

10  the 3553(a) factors, perhaps this case, which is not off

11  the charts in the guidelines, it's not a radical

12  departure or variance that would put Mr. Sanborn's

13  sentencing in a context where he could get work release

14  or home detention, courts are now imposing sentences as

15  long as 12 or 18 months of home detention as opposed to

16  the old guideline structure of Zone C type cases.

17          So, it's something for the court to weigh in

18  the 3553(a) factors as far as the deterrence factor and

19  what is a reasonable and appropriate sentence.

20          THE COURT:  All right.  Thank you.

21          MR. BAUM:  Thank you, your Honor.

22          THE COURT:  You have an opportunity to speak

23  before I impose sentence.  You don't have to say

24  anything.  I won't hold it against you if you don't.

25  But if there is anything you want to say, I'll be happy

1    to hear it.  Did you want to speak, sir?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  All right, go ahead.

4            THE DEFENDANT:  Okay, I just briefly want to

5    say I'm sorry to the court and most importantly to Mr.

6    Weber and his family for what I've done.  I've shamed

7    myself, my family, and my children and I'm deeply sorry.

8            THE COURT:  All right, thank you.

9            MR. KINSELLA:  Judge, may I have one moment,

10   please?

11           THE COURT:  Yes.

12           (Pause.)

13           MR. KINSELLA:  Judge, the owner of Diamond

14   Action is here and would like to speak to the court.

15   He's the victim of the crime.

16           THE COURT:  All right.  I do think under the

17   current law the victims have a right to apprise the

18   court of their views.  So sir, I'll be happy to hear

19   what you want to say.  You can come up and speak here if

20   you're comfortable, if you'd rather speak from there,

21   that's okay.  However you want to do it is fine with me.

22           MR. WEBER:  I just want to say, your Honor,

23   that Mr. Sanborn took three years of my life that I will

24   never get back.  It's far more than money.  My wife was

25   dying of cancer at the time and I trusted Mr. Sanborn

1    who was a good friend of mine I thought at the time and

2    it was -- I didn't think I was going to make it.  I

3    didn't think I was going to get through it.  And it was

4    by far the worst time of my life.  And this is an

5    important day for me being here today.  Thank you.

6              THE COURT:  All right.  Thank you for coming,

7    and I really am so sorry about what you had to go

8    through, particularly with your wife's illness at the

9    time.

10             Financial crimes, particularly when they're

11   committed by people with whom you have a trusting

12   relationship, are particularly damaging, and because of

13   the sense of betrayal that people feel in your position,

14   it's hard to get over, it's hard to trust other people.

15   I fully understand because I've heard it from so many

16   other people over the years how seriously financial

17   crimes can affect people, so I understand that, and I

18   will take your concerns into account.

19             I also know from talking to many people that

20   there really is no sentence that can adequately address

21   the harm that has been done to you.  As I suggested, I

22   think if someone really had wanted to try to make amends

23   to you, what I would have liked to have seen is someone

24   who would stand up and do something about it, and maybe

25   if he had personally apologized and taken a second job

1   and tried to pay you 40, $50,000 back over the time

2   between the time this was discovered and now, that might

3   go some way to helping you come to terms with this,

4   never to fully accept or to wipe out the harm that had

5   been done to you, but it seems to me that would have

6   been much more valuable than simply standing up and

7   saying I'm sorry, judge, when you know you're about to

8   be sentenced and you're hoping the judge will treat you

9   as leniently as possible.

10          But I have to say to you, while I have to

11   consider your concerns, I also have a broader set of

12   concerns that I have to be considering.  The harm done

13   to you is one of them.  The harm done to society by this

14   defendant's actions have to be considered as well, as

15   well as factors that concern this defendant.  The law

16   that I have to impose -- use when I impose sentence

17   requires me to give a sentence that is equal to but not

18   greater than necessary to achieve the purposes of the

19   sentencing statute, and that's an important limiting

20   principle.  I simply can't impose sentences to -- that

21   are extremely high to simply address the concerns of the

22   victim.  I have to consider all factors -- the harm that

23   the defendant has done as well as what is the

24   defendant's potential for rehabilitation, what are the

25   effects of the defendant's sentence on other people,

1    family members, children.  I have to consider society's

2    interest in seeing that a sentence deters others from

3    engaging in similar conduct.  I have to try to take into

4    account concerns, proportionality concerns so that like

5    people are treated alike around the country, and that's

6    why the sentencing guidelines here are particularly

7    useful because they give me a template that tells me

8    this is what the Sentencing Commission thinks for a

9    typical case with this kind of loss in a crime committed

10   this way is the appropriate range of sentences to

11   consider, and to the extent I differ from that, I have

12   to really be able to justify it because otherwise I am

13   acting in a way that's disproportionate when compared

14   with other kinds of people who commit crimes in front of

15   other judges around the country.

16              So I appreciate what you have to say.  I take

17   it very seriously.  I accept that this man has harmed

18   your life very seriously, and I will take into account

19   your concerns when I sentence the defendant.

20              All right, does anyone need to say anything

21   else before I impose sentence?

22              MR. KINSELLA:  No, thank you.

23              MR. BAUM:  We would ask the court for certain

24   recommendations after you've imposed sentence, your

25   Honor.

1           THE COURT:  All right, well, let me address

2     the length of the sentence here.

3           Mr. Kinsella, I understand you bargained for a

4     sentence at the bottom of the range.  I think a sentence

5     in the middle of the range here is appropriate.  In my

6     view there's no mitigating factor, there's no

7     aggravating factor that's not taken into account by the

8     guidelines here.  This is the quintessentially typical

9     case that the guidelines, in my view, correctly capture

10    the appropriate sentence, and a sentence in the middle

11    of the range is appropriate.

12          I have considered your psychological report,

13    the arguments counsel have made, I considered the

14    letters.  I accept the fact that you have tried to be a

15    good father, you tried to be a good husband, you have

16    family members that care about you, you have done

17    charitable works in the community, I accept all of that,

18    but they don't excuse the seriousness of your conduct

19    for which you have to be held to account.  And I know

20    this will harm your family, your children, they will be

21    deprived of the support that you owe them, they will be

22    deprived of whatever contact with your children you have

23    while you're in prison, I know that it will harm them,

24    but I cannot give you a lighter sentence simply because

25    incarcerating you will harm others.  I need to hold you

1   to account for the serious crime you committed.  In this

2   case, a sentence within the guideline range is in my

3   view an appropriate sentence, so that's why I'm imposing

4   the sentence that I'm imposing.

5          Now, what would you like me to include

6   specifically with respect to recommendations?

7          MR. BAUM:  Thank you, your Honor.  We would

8   ask the court to recommend that he be designated to Fort

9   Devens, Massachusetts.  He lives in Massachusetts.

10         THE COURT:  I certainly have a strong interest

11   in incarcerating him as close as possible to family

12   members.  It's not clear to me that the BOP will

13   consider Devens an appropriate placement.  I have no

14   objection to him being incarcerated there, so I will

15   include that as a recommendation, but it's up to the

16   Bureau of Prisons ultimately where he should be

17   incarcerated.

18         MR. BAUM:  We understand that, your Honor.

19   And finally we would ask that he be allowed to

20   self-surrender after the holidays.

21         THE COURT:  Let me ask counsel's view on that.

22   Do you have reason to believe he poses a risk of flight

23   or a risk of harm?

24         MR. KINSELLA:  No.

25         THE COURT:  All right.  This isn't a case in

1  which self-surrender is ordinarily precluded, thus where

2  there isn't a risk of flight or a risk of harm, self-

3  surrender ordinarily is an appropriate thing in these

4  circumstances.  I normally give two to three weeks to

5  allow for designation, but we're close enough to the

6  Christmas holidays that it seems to me that it makes

7  sense to allow self-surrender in early January.  Does

8  anybody object to that proposal?

9          MR. KINSELLA:  No, we do not object.

10          THE COURT:  All right, thank you.  You can be

11  seated.  I'm going to read the sentence.  It may take me

12  a moment.

13          Pursuant to the Sentencing Reform Act of 1984

14  it is the judgment of the court that the defendant, Kurt

15  Sanborn, is hereby committed to the custody of the

16  Bureau of Prisons to be in prison for a term of

17  30 months.

18          Upon release from imprisonment the defendant

19  shall be placed on supervised release for a term of

20  three years.

21          Within 72 hours of release from the custody of

22  the Bureau of Prisons the defendant shall report in

23  person to the probation office in the district to which

24  the defendant is released.

25          While on supervised release the defendant

1   shall not commit another federal, state or local crime,

2   shall comply with the standard conditions that have been

3   adopted by this court, and shall comply with the

4   following additional conditions:

5           The defendant shall not illegally possess a

6   controlled substance.

7           The defendant shall not possess a firearm,

8   destructive device, or any other dangerous weapon.

9           The defendant shall submit to DNA collection.

10          The drug testing condition required by 18,

11  USC, Section 3563(a)(5) is suspended based on the

12  court's determination that the defendant poses a low

13  risk of future substance abuse.

14          The defendant shall pay any financial penalty

15  that is imposed by this judgment and that remains unpaid

16  at the commencement of the term of supervised release.

17          The defendant shall provide the probation

18  officer with access to any requested financial

19  information.

20          The defendant shall apply all monies received

21  from income tax refunds, lottery winnings, judgments

22  and/or other anticipated or unexpected financial gains

23  to the outstanding court ordered financial obligation.

24          The defendant shall not incur new credit

25  charges or open additional lines of credit without the

1   approval of the probation officer unless he is in

2   compliance with the installment payment schedule.

3          The defendant shall refrain from engaging in

4   any occupation involving fiduciary responsibilities

5   during the term of supervision.

6          It is further ordered that the defendant shall

7   pay a special assessment of $100.

8          It is further ordered that the defendant shall

9   make restitution to the following persons in the

10  following amounts.  Diamond Action, Inc., $293,960.79;

11  HNTB Sports Assembly Architecture, $9,450.  Any payment

12  that is not payment in full shall be divided

13  proportionately among the persons names.

14         The court finds that the defendant does not

15  have the ability to pay a fine.  The court will waive

16  the fine in this case.  The court has determined that

17  the defendant does not have the ability to pay interest

18  and it is ordered that the interest requirement is

19  waived for the restitution.  The defendant is ordered to

20  begin payments towards the total criminal monetary

21  penalties immediately, and upon commencement of the term

22  of supervised release the probation officer shall review

23  the defendant's financial circumstances and recommend a

24  payment schedule on any outstanding balance for approval

25  by the court.

1           The defendant shall surrender himself to an

2    institution designated by the Bureau of Prisons on or

3    before 2 p.m. on January 8th.

4           The court recommends that the defendant be

5    able to serve his sentence as close to family members in

6    Massachusetts if possible, Fort Devens if it's an

7    appropriate facility for his incarceration in the

8    judgment of the Bureau of Prisons.

9           Are there any objections to the sentence other

10   than those previously raised?

11          MR. BAUM:  May I have just a moment, your

12   Honor.

13          THE COURT:  Yes.

14          (Attorney Baum consulting Attorney Kinsella.)

15          MR. BAUM:  Not at this time, your Honor.

16   There may be a joint motion filed concerning the

17   numbers, the actual amount of restitution, but we're not

18   prepared to deal with that now.  We will accept the

19   court's calculation --

20          THE COURT:  Well, if there's going to be any

21   modification to restitution I want the government to

22   represent that it's consulted with the victim, and any

23   position that the victim takes that's inconsistent with

24   any position the government may take, that it's fully

25   presented to the court.

1           MR. KINSELLA:  Of course, judge, and this is

2    just brought to my attention this second.  I'm really

3    not in a position to do the math right now.  I told him

4    we will look at the matter, report to the victim and

5    also to you as soon as possible.

6           THE COURT:  Yeah, you know my point, though.

7           MR. KINSELLA:  I do.

8           THE COURT:  They came here for sentencing and

9    wanted to know what the sentence is going to be, and if

10   there is going to be any change in the restitution

11   portion of the sentence I want him to be consulted, I

12   want his position to be presented to the court --

13          MR. KINSELLA:  Understood.

14          THE COURT:  -- before any change is made in

15   the sentence.

16          MR. KINSELLA:  Understood.

17          THE COURT:  All right, anything else?

18          MR. BAUM:  No, your Honor.

19          THE COURT:  I will impose the sentence as I

20   have read it.  You may have a limited right to appeal.

21   If you want to appeal, consult with your attorney and

22   direct him to file a notice of appeal on your behalf.

23   If you prefer, you can ask the clerk's office for help,

24   but the notice of appeal does have to be filed within

25   ten days or you lose your right to appeal.

24

1          Anything else?

2          MR. BAUM:  No, your Honor.

3          MR. KINSELLA:  Thank you, your Honor.

4          (Adjourned at 12:10 p.m.)

5                  C E R T I F I C A T E

6

7          I, Sandra L. Bailey, do hereby certify that

8     the foregoing transcript is a true and accurate

9     transcription of the within proceedings, to the best of

10    my knowledge, skill, ability and belief.

11

12

13    Submitted: 12/9/09       /s/ Sandra L. Bailey
                               SANDRA L. BAILEY, LCR, CM, CRR
14

15

16

17

18

19

20

21

22

23

24

25