**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 6-13-2016**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                          \*
UNITED STATES OF AMERICA                  \*
                                          \*  08-CR-128-01-SM
              v.                          \*  13-CR-28-01-SM
                                          \*  December 17, 2015
        KURT SANBORN                      \*  11:15 a.m.
                                          \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF SUPERVISED RELEASE REVOCATION HEARING
AND SENTENCING HEARING
BEFORE THE HONORABLE STEVEN J. MCAULIFFE


APPEARANCES:


For the Government:      Robert M. Kinsella, AUSA
                         U.S. Attorney's Office


For the Defendant:       Michael D. Ramsdell, Esq.
                         Ramsdell Law Firm, PLLC


Probation:               Sean Buckley


Court Reporter:          Susan M. Bateman, LCR, RPR, CRR
                         Official Court Reporter
                         United States District Court
                         55 Pleasant Street
                         Concord, NH 03301
                         (603) 225-1453

1                P R O C E E D I N G S

2            THE CLERK:  Court is in session and has for

3   consideration a supervised release revocation proceeding in

4   the matter of United States of America versus Kurt Sanborn,

5   case number 08-CR-128-01-SM, and a sentencing in the matter

6   of United States of America versus Kurt Sanborn, case number

7   13-CR-28-01-SM.

8            THE COURT:  Mr. Kinsella -- all right, why don't we

9   take the earlier case first, I guess, unless somebody has an

10  objection, 08-128-01, the revocation.

11            Mr. Kinsella.

12            MR. KINSELLA:  Yes, Judge.  I understand the

13  defendant is going to admit to the violation.

14            THE COURT:  Is that correct, Mr. Ramsdell?

15            MR. RAMSDELL:  That is correct, your Honor.

16            THE COURT:  All right.

17            Mr. Sanborn, do you understand you're not required

18  to admit this violation, that actually you're entitled to a

19  hearing at which the government would be required to prove

20  the violation by a preponderance of the evidence before I

21  could determine that you actually violated the terms of

22  supervised release as set forth in the charge and petition?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  At that hearing you would be entitled

25  to the assistance of counsel to act in your defense.  You

1    would be entitled to see and hear all witnesses and have them

2    cross-examined in your defense.  You would be entitled to

3    testify or not testify as you elected, and you would be

4    entitled to the issuance of compulsory process, or subpoenas,

5    to assure the attendance of witnesses to testify in your

6    defense.

7              Do you understand that you would have all those

8    rights?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that if you waive

11   those rights and admit the violation, there won't be any

12   hearing.  Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Do you also understand that based upon

15   your admission alone I'll find that you did violate the terms

16   of supervised release as set forth in the petition and

17   warrant?  Do you understand that as well?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Have you discussed the matter of

20   waiving your rights to a hearing and associated rights with

21   Mr. Ramsdell?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you in fact wish to give up those

24   rights?

25             THE DEFENDANT:  Yes, sir.

1          THE COURT:  Have there been any pressures, any

2    inducements of any kind, for you to waive those rights and

3    admit the violation?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  All right.  The petition and the

6    revocation report suggests that you violated the terms of

7    supervised release in that on or about June 4, 2014, you

8    committed another state criminal offense; that is, violation

9    of a trespass order in violation of Rhode Island statute

10   Section 11-44-26, as evidenced by your conviction in the

11   Third District Court in Kent County, Rhode Island.

12          Did you in fact commit the offense of violation of

13   trespass order as described?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  And you were in fact

16   convicted in the Rhode Island state court?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Okay.  All right.  You may be seated.

19   Thank you.

20          Would you like to be heard on sentencing, Mr.

21   Ramsdell?

22          MR. RAMSDELL:  I would, your Honor.

23          THE COURT:  Or should we -- well, I guess we should

24   put that off.

25          MR. RAMSDELL:  That makes sense as well, your

1    Honor.

2              THE COURT:  All right.  With respect to case number

3    13-28-SM, have you reviewed the presentence investigation

4    report with your client, Mr. Ramsdell?

5              MR. RAMSDELL:  I have.

6              THE COURT:  Are there any objections you would like

7    to raise to the report?

8              MR. RAMSDELL:  No, your Honor.

9              THE COURT:  Mr. Kinsella, are there any objections

10   the government would care to raise with respect to the

11   report?

12             MR. KINSELLA:  No, thank you.

13             THE COURT:  All right.  There being no objections,

14   I adopt the findings and recommendations set forth in the

15   report.  Based upon those findings I conclude that the total

16   offense level applicable in this case under the sentencing

17   guidelines is level 19 and the Criminal History Category is

18   Category III.

19             Would you like to be heard on sentencing, Mr.

20   Ramsdell?

21             MR. RAMSDELL:  I would, your Honor.

22             THE COURT:  I suppose we should -- I assume you

23   want to combine the hearings on sentencings in both cases.

24             MR. RAMSDELL:  We do.

25             THE COURT:  All right.  Why don't we address

1    sentencing in both cases.

2            MR. RAMSDELL:  Let me start this way.  Because the

3    plea agreement was reached quite a while ago I was unaware --

4    and frankly my client was unaware until this week when we

5    read the government's sentencing memorandum that the

6    stipulation -- the nonbinding stipulation regarding the loss

7    amount.

8            When I saw the stipulation, to be perfectly honest,

9    I thought that Mark Howard and the government had just simply

10   agreed -- since that was the actual loss amount, that they

11   had stipulated for the loss amount as opposed to what would

12   be the intended loss amount because I've had plenty of cases

13   where the government has done that.

14           When I read the government's sentencing memorandum,

15   I became aware, as did my client, that apparently Mark and

16   the government, frankly, just didn't think of the intended

17   loss amount.  They thought the loss amount was the --

18           THE COURT:  I may need to be corrected.  When I

19   read his memorandum, I thought -- maybe I read it quickly,

20   but I thought the government was saying there was an actual

21   loss amount.  It just hadn't been accounted for because it

22   was repaid.

23           MR. RAMSDELL:  Oh.

24           THE COURT:  In other words, lender s A and B were

25   in fact defrauded out of -- I forget what the total was, but

1   then there was a partial repayment on the secondary financing

2   and --

3              MR. RAMSDELL:  Before any prosecution.  That's

4   correct.

5              THE COURT:  Before any prosecution.

6              MR. RAMSDELL:  Absolutely.

7              THE COURT:  But there was still a loss.

8              MR. RAMSDELL:  But they were only out $200,000, not

9   out $360,000.  So they actually only lost $200,000.

10             THE COURT:  Well, I guess it depends on what place

11   on the timeline you analyze it from.  There was a point at

12   which the loss exceeded 200,000, right?

13             MR. RAMSDELL:  Yes.

14             THE COURT:  Then it was paid back to reduce the

15   amount to 200,000.

16             MR. RAMSDELL:  Before any government action in the

17   matter.

18             THE COURT:  Right.

19             MR. RAMSDELL:  I agree with that.

20             THE COURT:  I stole $500,000.  Happily, I gave back

21   250 before you caught me.  What's the loss amount, 500 or

22   250?  500.

23             MR. RAMSDELL:  My point is that there's a

24   stipulation in the plea agreement that the government --

25             THE COURT:  No, I understand.  I'm just trying to

1    get it in my head that it's not -- we're not talking about

2    intended loss under the guidelines as that phrase is

3    understood.  That usually means, look, nobody really lost the

4    amount, but had he gotten away with what he intended to do,

5    the loss amount would have been whatever, but that's not this

6    case.

7              MR. RAMSDELL:  No.  I agree with your Honor.  You

8    have the facts correct.

9              THE COURT:  Okay.

10             MR. RAMSDELL:  We've submitted a sentencing

11   memorandum where we've requested a sentence of 21 months and

12   set forth our reasons in there.  And I'm not going to go

13   through all of them, but I would suggest to the Court that

14   because the offense conduct we're here for is more than ten

15   years old because of the prosecution that occurred and the

16   sentencing that occurred after the offense conduct here, it

17   does change the guideline calculations significantly because

18   had the offenses been prosecuted all at the same time the

19   guideline calculation -- Mr. Sanborn pled to the 2009 offense

20   and received a sentence at the low end of the guideline

21   range, which was 30 to 37 months, and received a 30-month

22   sentence.

23             Had the offense that we're here for today been

24   discovered back at that point, and had he been sentenced on

25   these charges as well as the 2009 offense, the guideline

1   calculation would have been 37 to 46 months for all of the

2   offenses combined.

3           Instead what we're looking at now is that he's

4   served 30 months.  He received a 30-month sentence for the

5   2009 offense.  And now instead of an additional seven months

6   at the low end of the guideline range -- he's already served

7   about 17 months on the offense that we're here for today, and

8   the government is seeking a total of 27 months for the

9   convictions that we're here for today.

10          We think that 21 months is sufficient.  And we

11   think that -- between the age of the offenses and the fact

12   that the 2009 conviction does impact the criminal history

13   category, it impacts the guideline calculation, we think that

14   under all of the circumstances of this case, including that

15   -- I mean, the Court is aware that this case has -- there was

16   a competency issue that was resolved.  As we stated in the

17   sentencing memorandum, BOP custody -- there have been issues

18   that were raised about it before.

19          And quite honestly, my client is scared to death of

20   that prospect and I think that maybe more than anything else

21   I can offer to the Court demonstrates that he doesn't want to

22   be back here.  I think that's a greater motivator for lack of

23   recidivism or likelihood of recidivism than anything else I

24   could possibly offer to the Court.

25          But I would point out that my client not long ago

1   witnessed an offense being committed at the Strafford County

2   House of Corrections and cooperated with the Marshal Service

3   and Strafford County.

4           For those reasons we're asking that Mr. Sanborn

5   receive a sentence of 21 months because it is what's

6   necessary, and not more than necessary, for the underlying

7   offense.

8           And we're asking with respect to the violation --

9   the supervised release violation that's in front of the

10  Court, we know that the government is asking for three months

11  incarceration on that.

12          What we would recommend to the Court instead is

13  that -- sentence him to six months incarceration on it but

14  make it home confinement, which would be followed by a period

15  of supervised release.  And we think, frankly, under the

16  circumstances of this case that that's a sentence that's

17  required and not more than required.  It's a sentence that

18  fits under all of the circumstances, and we hope that's the

19  sentence the Court will impose.

20          Whatever sentence the Court imposes, we also ask

21  that the Court make a recommendation to the BOP that Mr.

22  Sanborn serve whatever time at FMC Devens because that's the

23  closest to his family.

24          Thank you, your Honor.

25          THE COURT:  Thank you, Mr. Ramsdell.

1           Mr. Kinsella.

2           MR. KINSELLA:  Good morning, Judge.

3           First of all, I want to begin by recognizing that

4    the case was indicted many years after the offense conduct

5    occurred, and the defendant does not allege that that was due

6    to any bad faith by the government.

7           And similarly, with regard to the argument that had

8    the cases been prosecuted at the same time that his offense

9    level would have been different because it would be a

10   combined offense level under the guidelines, I think that

11   that argument would have some merit if there was some

12   suggestion that the government was manipulating events in

13   terms of timing of prosecution in order to achieve a more

14   severe sentence in this case, but that's not the case either.

15          The fact is that we investigated the case when we

16   found out about it.  We acted diligently to try to find the

17   evidence that we needed to prosecute the defendant, and it

18   turns out that we prosecuted in the way that we did, and his

19   criminal history category is as agreed to in the probation

20   report.

21          We've also accounted for the age of the offense

22   conduct in this particular case by recommending a sentence

23   that's three levels below the advisory guideline sentencing

24   range that we've asked you to adopt based upon the loss

25   stipulation, and I think that that appropriately accounts for

1    the age of the case.

2            THE COURT:  I was trying to figure out when I was

3    reading your memo what that is.  Variation, I suppose, as

4    opposed to a departure?

5            MR. KINSELLA:  Yes, Judge.  We're asking for a

6    variance, yes.

7            In that regard, before I finish, before I move to

8    the SR violation, under all the circumstances, particularly

9    those outlined in our memo, we would ask that you impose a

10   sentence of 27 months on the criminal case.

11           With regard to the SR violation, you know from

12   reading the probation report that the defendant has had

13   numerous instances of misbehavior in violating rules of the

14   court while on supervised release and also at the same time

15   while on bail.

16           He's really not amenable -- at this point he hasn't

17   demonstrated that he is amenable to supervision or the rules

18   of the probation officer, and there should be some separate

19   sentence, some consequence for that behavior, and for that we

20   recommend that he be sentenced to three months in jail

21   consecutive to the 27 months we've recommended.

22           THE COURT:  You don't think home detention would be

23   effective?

24           MR. KINSELLA:  I don't think so, Judge, because we

25   tried that before.  He's been on home detention once before.

1   He violated that by missing his curfew.  He was allowed to go

2   to work, and he had a curfew from 7 p.m. to 7 a.m.

3           There was a series of days in November of 2014 that

4   he repeatedly violated.  Even then when he was released again

5   on conditions with a condition that he not be allowed out of

6   his home without the pre-approval of the probation officer,

7   it didn't take many days before he got approval to leave his

8   home to attend religious services for a very discrete period

9   of time on December 24th but chose to take that opportunity

10  to rather go to a Christmas party in Cumberland, Rhode

11  Island, where his new girlfriend was living where he was

12  arrested.  So I don't think home confinement was an effective

13  deterrent to him in that regard.

14          THE COURT:  Thank you, Mr. Kinsella.

15          Mr. Ramsdell.

16          MR. RAMSDELL:  May I just respond quickly?

17          THE COURT:  Of course.

18          MR. RAMSDELL:  I understand the government's

19  argument.  However, I would urge the Court on a couple of

20  points.  One, the violation occurred in June of 2014.  That

21  was a year and a half ago.  Since that time Mr. Sanborn has

22  spent almost the entire year and a half in jail.

23          In December when he went to the Christmas party and

24  didn't return on time, Mr. Sanborn was not on the medication

25  he was supposed to be taking at the time.  And I would

1    suggest to the Court that the PSR demonstrates that it was at

2    that time that he twice committed suicide -- not committed,

3    but attempted to commit suicide, including while incarcerated

4    at the Strafford County House of Corrections.

5            It's now a year later than that.  It's a year and a

6    half later than the trespass, which had nothing to do with

7    the theft or the underlying offense, and obviously at the

8    time Mr. Sanborn was not himself.

9            I don't think the prior instances that the

10   government is pointing out are really indicative at this

11   point of how successful Mr. Sanborn may be on supervised

12   release or home confinement at this point.  And we would ask

13   the Court, looking at such a small difference in the amount

14   of time here, to give Mr. Sanborn a chance, quite frankly.

15           THE COURT:  All right.  Thank you, Mr. Ramsdell.

16           Mr. Sanborn, you have a right of allocution, which

17   means you have the right to address the Court on any subject

18   prior to the imposition of sentence.  You're not required to

19   exercise that right, but if you would care to I would be

20   happy to hear from you now.

21           But before we do that, with respect to the -- not

22   the violation but the criminal sentencing that's before me in

23   13-28-SM, I have before me what appears to be an executed

24   acknowledgment and waiver of rights -- or an acknowledgment

25   form in which you say you understand and acknowledge that

1   you've received and comprehend the sentencing options and

2   supervision conditions.  In other words, there are a number

3   of standard conditions that would go along with the sentence

4   with respect to supervised release and restrictions and so

5   forth.  That you've gone over those standard conditions with

6   counsel and you understand them.  Did you sign this -- did

7   you review this document and sign it?

8             THE DEFENDANT:  Yes, I did, your Honor.

9             THE COURT:  And did you review those conditions and

10   do you think you understand them?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Okay.

13             Mr. Ramsdell, you obviously went over it with him

14   and signed this form as well?

15             MR. RAMSDELL:  Yes, your Honor.

16             THE COURT:  Feel free, Mr. Sanborn, to address your

17   allocution to either case or both cases at the same time.

18   That's fine.

19             THE DEFENDANT:  I think I just want to point out,

20   your Honor, that the two crimes, one that I already served

21   time for and this one, happened in the same year and a half

22   back in 2002, 2003, in that area, that, you know, my life was

23   just in turmoil.

24             Subsequently, I've gotten help.  I've gone on

25   medication.  I had a period starting in November of 2013 that

1    I came off the medication.  I went to a new therapist and

2    they took me off the medication, and I just spiraled for the

3    next year and a half.

4           The night that Mr. Kinsella mentioned, Christmas

5    Eve, was just so difficult for me.  I actually attempted to

6    take my life before I left the house, and I really don't

7    remember much after that except ending up in Strafford

8    County.  But since then I've gotten back on the medication

9    Remeron and Zoloft and, you know, I think I'm in control.

10   I'm sorry.

11          THE COURT:  No.  That's perfectly fine.

12          All right.  Anything else?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  All right.  Thank you.  I appreciate

15   it.

16          I'll announce the sentence that I intend to impose

17   in each case, but I won't actually impose the sentences until

18   I've given counsel an opportunity to raise any additional

19   legal or factual issues that you may care to raise.

20          With respect to case number 13-CR-28-SM, the Court

21   intends to impose sentence as follows:

22          Pursuant to the Sentencing Reform Act of 1984, it

23   is the judgment of this Court that the defendant, Kurt

24   Sanborn, is hereby committed to the custody of the Bureau of

25   Prisons to be imprisoned for a term of 27 months on each of

1    Counts 1 through 3.  All such terms to be served

2    concurrently.

3           Upon release from imprisonment the defendant shall

4    be placed on supervised release for a term of three years on

5    each of Counts 1 through 3.  All such terms to run

6    concurrently.

7           Within 72 hours of release from the custody of the

8    Bureau of Prisons the defendant shall report in person to the

9    probation office in the district to which the defendant is

10   released.

11          While on supervised release the defendant shall not

12   commit another federal, state, or local crime, shall comply

13   with the standard conditions that have been adopted by the

14   Court, and shall comply with the following additional

15   conditions:

16          The defendant shall not illegally possess a

17   controlled substance.  The defendant shall not possess a

18   firearm, destructive device, or any other dangerous weapon.

19          Pursuant to 42 U.S. Code, Section 14135a, the

20   defendant shall submit to DNA collection while incarcerated

21   in the Bureau of Prisons or at the direction of the U.S.

22   Probation Office.

23          The defendant shall refrain from any unlawful use

24   of a controlled substance.

25          The defendant shall submit to one drug test within

1   15 days of placement on supervision, and at least two

2   periodic drug tests thereafter, not to exceed 72 drug tests

3   per year of supervision.

4           The defendant shall pay any financial penalty

5   imposed by this judgment that remains unpaid at the

6   commencement of the term of supervision.

7           In addition, the defendant shall comply with the

8   following special conditions:

9           The defendant shall not incur new credit charges or

10  open additional lines of credit without the approval of the

11  probation officer unless he is in compliance with the

12  installment payment schedule.

13          The defendant shall provide the probation officer

14  with access to any requested financial information.

15          The defendant shall apply all monies received from

16  income tax refunds, lottery winnings, judgments and/or any

17  other anticipated or unexpected financial gains to the

18  outstanding court ordered financial obligation.

19          As directed by the probation officer, the defendant

20  shall participate in a program approved by the United States

21  Probation Office for the treatment of narcotic addiction or

22  drug or alcohol dependency which will include testing for the

23  detection of substance use or abuse.

24          The defendant shall also abstain from the use of

25  alcoholic beverages and/or all other intoxicants during and

1   after the course of treatment.  The defendant shall pay for

2   the cost of treatment to the extent he is able as determined

3   by the probation officer.

4           The defendant shall participate in a program of

5   mental health treatment as directed by the probation officer

6   until such time as the defendant is released from the program

7   by the probation officer.  The defendant shall pay for the

8   cost of treatment to the extent he is able as determined by

9   the probation officer.

10          The defendant shall not engage in a profession that

11  provides access to personal identification information or any

12  fiduciary responsibility without the approval of the

13  probation officer.

14          The defendant is ordered to pay a non-waivable

15  special assessment of $300 which shall be due in full

16  immediately in the form of a lump sum payment.

17          The Court finds that the Stewart Title Company has

18  suffered injuries compensable under the Mandatory Restitution

19  Act.  It is ordered that the defendant make restitution to

20  Stewart Title Guaranty Company in the amount of $200,000.

21          The Court finds that the defendant does not have

22  the ability to pay a fine, and the Court will waive

23  imposition of a fine in this case.

24          The Court has determined that the defendant does

25  not have the ability to pay interest, and it is ordered that

1    the interest requirement is waived with respect to

2    restitution.

3              Payments toward the criminal monetary penalties are

4    ordered to begin immediately within 30 days of the

5    commencement of supervision.  Payments shall be made in equal

6    monthly installments of $250 during the period of supervision

7    and thereafter.

8              Upon commencement of supervision the probation

9    officer shall review the defendant's financial circumstances

10   and if necessary recommend a revised payment schedule on any

11   outstanding balance for approval by the Court.

12             The defendant shall be remanded to the custody of

13   the United States Marshal.

14             This sentence does represent a below guideline

15   sentence, and I'm varying downward on the motion of the

16   government and on grounds advanced by the government.  I'm

17   not sure it's a motion, but the government's argument at

18   least in their sentencing memorandum basically taking into

19   account the age of the case and the fact the prosecution

20   was -- again, without any bad faith certainly on the

21   government's part or any attempt to manipulate the guidelines

22   or anything else, but still the extensive delay certainly

23   changes the circumstances with respect to this defendant, and

24   for the reasons argued by Mr. Ramsdell with regard to the

25   mental difficulties the defendant has experienced and

1    particularly back in that time period.

2              With respect to the supervised release violation

3    offense -- or violation, I guess, in case number 8-CR-128,

4    the Court hereby imposes sentence as follows:

5              Pursuant to the Sentencing Reform Act of 1984, it

6    is the judgment of this Court that the defendant, Kurt D.

7    Sanborn, is hereby committed to the custody of the Bureau of

8    Prisons to be imprisoned for a term of three months.  Such

9    term to run concurrently to the term of imprisonment imposed

10   in docket number 13-CR-28 in the District of New Hampshire.

11             The outstanding special restitution balance of

12   $293,208.79 is hereby reimposed.  Payments to begin

13   immediately.

14             The defendant shall be remanded to the custody of

15   the United States Marshal.

16             Normally, Mr. Sanborn, you should understand that

17   in my view that would presumptively be a consecutive, not a

18   concurrent sentence.  I'm imposing it concurrently for a

19   couple of reasons:

20             1.  The Rhode Island Court gave you a year of

21   probation on that underlying offense.

22             2.  I think 27 months is sufficient in total under

23   these circumstances.

24             3.  You are going to be on supervised release in

25   the substantive case, if you will, the criminal case,

1   13-28-1.  Similar terms and conditions are going to be

2   imposed.  I honestly don't think three additional months in

3   confinement is going to either get your attention or not get

4   your attention one way or the another, and I think 27 months

5   is enough at the moment.

6            But when you get out if you do not stay on your

7   medication plan, if you do not comply with the requirement

8   that you obtain mental health treatment and drug treatment as

9   required by the probation officer, you of course will be back

10  here, at which point you should not expect any leniency

11  because at that point when you violate -- your history of

12  violations, they don't put you in good stead.  Do you

13  understand?

14            THE DEFENDANT:  Yes, sir.  I understand.

15            THE COURT:  Okay.  So 27 months at the moment.

16  Good enough.  In the future if you violate the terms of

17  supervised release, given this track record you can pretty

18  much count on you're going to go away for quite a while.

19  Okay?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  All right.  Would either counsel like

22  to raise any legal or factual issue with regard to the

23  sentences the Court intends to impose in each case?

24            MR. KINSELLA:  No.  Thank you very much.

25            MR. RAMSDELL:  Could we get a recommendation for

1    Devens, your Honor?

2              THE COURT:  You know, I'm happy to do it, Mr.

3    Ramsdell, but it's absolutely worthless.

4              The Court recommends that the Bureau of Prisons

5    consider designating the facility at FMC Devens as the place

6    for service of defendant's period of incarceration.

7              Mr. Sanborn, I don't want you to take any console

8    from that.

9              THE DEFENDANT:  I'm sure they're going to put me

10   wherever they want to.

11             THE COURT:  They're going to put you where they

12   think is appropriate after doing the classification

13   evaluation, and honestly they really have no care whatsoever

14   what a judge recommends.  They really don't.  And they don't

15   have to.  It's their call.  It's got nothing to do with the

16   Court.

17             I just hate to make the recommendation where I

18   think a defendant is sitting there thinking that that might

19   carry some weight.  It doesn't.  It's not a factor.  I don't

20   think they even see it, honestly.  They may see it in the PSR

21   or something.  I don't think it's even in the PSR, is it?

22             MR. BUCKLEY:  No.

23             THE COURT:  Yeah, it's not.

24             MR. RAMSDELL:  But it is in the BOP's guidelines as

25   one of the things they can take into consideration.

1           THE COURT:  Do you know about the letter?

2           MR. RAMSDELL:  I don't disagree with anything the

3     Court has said at all.

4           THE COURT:  No.  But, I mean, it's not just me

5     opining.  I can't remember the year now.  Three years ago now

6     the BOP sent a letter to every judge in the country saying

7     we're officially changing our policy.  Thanks for your

8     thoughts, but they doesn't count.  Putting it nicely, that's

9     what it said.

10          MR. RAMSDELL:  But I don't think they've actually

11    changed the written policy.  And if that's the case, I don't

12    see how it can hurt to ask for the recommendation.

13          THE COURT:  Well, it only hurts, in my view, in

14    that I think it might create unrealistic expectations by

15    defendants that that's going to make a difference when it's

16    not.

17          MR. RAMSDELL:  I understand when you have not

18    explained to your client that the BOP's reaction is going to

19    be we don't care that you may be making a terrible mistake

20    building up that expectation.

21          Mr. Sanborn knows better and he's told the Court he

22    knows better, but he can only do so many things, your Honor.

23          THE COURT:  I know.  But a lot of lawyers come in

24    here and just I think ask for it, and I think it gets glossed

25    over as something that might make a difference.  And I don't

1    like walking off the bench thinking they think it might make
2    a difference.
3              MR. RAMSDELL:  I agree with that also.
4              THE COURT:  Okay.  No objection?
5              MR. RAMSDELL:  No objection.
6              MR. KINSELLA:  No objection.
7              THE COURT:  The Court hereby then imposes the
8    sentences as announced in each case.
9              Mr. Sanborn, it's now my obligation to advise you
10   that you do have the right to appeal the sentence I've
11   imposed to the United States Court of Appeals for the First
12   Circuit located in Boston.
13             Any appeal you take must be filed within 14 days of
14   the entry of judgment, which I expect will be today.  But in
15   any event, 14 days from the entry of judgment.
16             You know, I'm also rethinking my view on that
17   warning.  Does the plea agreement contains waivers?  I assume
18   it does.  Waivers of appeal?
19             MR. KINSELLA:  Yes, it does.
20             THE COURT:  With the caveat, Mr. Sanborn -- and I
21   think I'm going to have to start articulating -- with the
22   caveat obviously that under your plea agreement in the
23   criminal case there are waivers of your rights to appeal or
24   collaterally challenge the conviction or sentence in this
25   case.

1            I don't want to tell you you don't have a right to
2    appeal, because you do because there are exceptions to those
3    waivers that are in the plea agreement, but your right to
4    appeal or seek collateral review of the conviction or
5    sentence in this case is subject to those waivers contained
6    in the plea agreement and the exceptions to the waivers.
7            The defendant is remanded to the custody of the
8    marshal, and Court's adjourned.  Thank you.
9            (Conclusion of hearing at 11:50 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                    C E R T I F I C A T E

 2

 3

 4          I, Susan M. Bateman, do hereby certify that the

 5     foregoing transcript is a true and accurate

 6     transcription of the within proceedings, to the best of

 7     my knowledge, skill, ability and belief.

 8

 9

10     Submitted: 3-15-16
                                    SUSAN M. BATEMAN, LCR, RPR, CRR
11                                  LICENSED COURT REPORTER, NO. 34
                                    STATE OF NEW HAMPSHIRE
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```